**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| JOSEPH HAEN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>IOWA TELECOMMUNICATIONS SERVICES, INC.; ALAN L. WELLS; KENNETH R. COLE; NORMAN C. FROST; BRIAN G. HART; H. LYNN HORAK; CRAIG A. LANG; KENDRIK E. PACKER; and WINDSTREAM CORPORATION,<br><br>    Defendants. | NO. 4:09-cv-501<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Joseph Haen ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to the allegations which pertain to Plaintiff, which allegations are based upon personal knowledge, as follows:

**NATURE OF THE ACTION**

1. This is a shareholder class action on behalf of Plaintiff and the public stockholders of Iowa Telecommunications Services, Inc. ("Iowa Telecom" or the "Company") seeking injunctive and other appropriate relief for breaches of fiduciary duty by Defendants Iowa Telecom, and its Board of Directors, in their attempt to sell Iowa Telecom to Windstream Corporation ("Windstream") through an unfair process and for an unfair price ("Proposed Transaction").

## PARTIES

2.  Plaintiff Joseph Haen owns shares of Iowa Telecom common stock and has owned such shares at all relevant times. Plaintiff is a citizen of Wisconsin.

3.  Iowa Telecom is incorporated in Iowa and headquartered in Newton, Iowa. Iowa Telecom provides wire line local exchange telecommunications services to residential and business customers in rural Iowa, Minnesota and Missouri. Iowa Telecom is named as a necessary party.

4.  Defendant Alan L. Wells ("Wells") has been Chief Executive Officer of Iowa Telecom and Chairman of the board of directors since 2002. Based upon information and belief, Wells is a citizen of Iowa.

5.  Defendant Kenneth R. Cole ("Cole") has been a director since April 2008. Based upon information and belief, Cole is a citizen of Iowa.

6.  Defendant Norman C. Frost ("Frost") has been a director since March 2006. Based upon information and belief, Frost is a citizen of Iowa.

7.  Defendant Brian G. Hart ("Hart") has been a director since November 2005. Based upon information and belief, Hart is a citizen of Iowa.

8.  Defendant H. Lynn Horak ("Horak") has been a director since April 2007. Based upon information and belief, Horak is a citizen of Iowa.

9.  Defendant Craig A. Lang ("Lang") has been a director since August 2005 and serves as the Company's lead director. Based upon information and belief, Lang is a citizen of Iowa.

10. Defendant Kendrik E. Packer ("Packer") has been a director since August 2005. Based upon information and belief, Lang is a citizen of Iowa.

11. Defendant Windstream is a company headquartered in Little Rock, Arkansas and provides telecommunications services in rural communities in the United States. Windstream owns subsidiaries that provide local telephone, high-speed Internet, long distance, network access, and video services in 16 states.

12. The defendants named above in paragraphs 4-10 are collectively referred to herein as the "Individual Defendants." The Individual Defendants, as officers or directors of the Company, or both, have a fiduciary relationship with Plaintiff and other public shareholders of the Company, and owe them the highest obligations of good faith, fair dealing, loyalty, and due care.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity exists between Plaintiff and each Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. This Court has personal jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts substantial business and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Courts permissible under traditional notions of fair play and substantial justice.

15. Venue is appropriate under the authority of 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this District and a substantial part of the challenged actions took place and/or emanated from this District.

## CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all other shareholders of the Company (except defendants and any person, firm, trust, corporation, or other entity related to or affiliated with defendants), who are or will be threatened with injury arising from defendants' actions, as more fully described herein (the "Class").

17. This action is properly maintainable as a class action.

18. The Class is so numerous that joinder of all members is impracticable. According to the Company's SEC filings, as of February 17, 2009, Iowa Telecom had 31,977,837 shares of common stock outstanding.

19. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

    a. Have the Individual Defendants breached their fiduciary duties owed by them to Plaintiff and the other members of the Class?;

    b. Are the Individual Defendants, in connection with the Proposed Transaction, pursuing a course of conduct that does not maximize the Company's value in violation of their fiduciary duties?; and

    c. Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct?

20. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

21. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

22. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

23. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

24. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

25. By reason of Individual Defendants' positions with the Company as officers or Directors, or both, they are in a fiduciary relationship with Plaintiff and the other public shareholders of the Company and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty, and full, candid, and adequate disclosure, as well as a duty to maximize shareholder value. They are required to exercise good faith

and subordinate their own personal interests to those of the public stockholders where their interests conflict.

26.  As alleged in detail below, the Individual Defendants have breached their fiduciary duties to the Company's public shareholders by facilitating the Proposed Transaction. In particular, the Proposed Transaction is not in the best interests of those shareholders the Directors have violated their fiduciary duties in approving the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

27.  Iowa Telecom provides wire line local exchange telecommunications services to residential and business customers in rural Iowa, Minnesota and Missouri.

28.  The Company has performed extremely well throughout the recession. In the third quarter of 2009 alone, the company generated $68.3 million in revenue and sales, a substantial increase from the third quarter of 2008 figure of $62.9 million. Local services revenue for third quarter 2009 also increased $1.6 million, or 8.9%, compared to the same period in 2008. These increased revenues were primarily due the Company's increased number of access lines resulting from the recent acquisition of Sherburne Tele Systems, Inc.

29.  As recently as October 29, 2009, Iowa Telecom touted its potential growth prospects in light of its business model and recent acquisitions. As the Company stated:

> "We are extremely pleased with our strong results for the quarter, which reflect the benefits of our strategy of growth through acquisition," said Alan L. Wells, Iowa Telecom Chairman and Chief Executive Officer. "During the quarter, we acquired substantially all of the assets of Sherburne Tele Systems, Inc. ("Sherburne"), making this the first quarter in which Sherburne is reflected in our results. Immediately after the closing, we began the process of integrating

Sherburne's operations into our systems and business processes. Sherburne is located approximately 30 miles from the Minnesota operations we acquired last year from Bishop Communications, providing us an opportunity to achieve significant benefits from consolidating our Minnesota properties. The financial results for the quarter reflect some of the synergies we expect to achieve from integrating these operations.

"In addition, on September 24, 2009, we completed our acquisition of New Ulm Telecom, Inc.'s ownership interests in EN-TEL Communications, LLC, SHAL, LLC, and SHAL Networks, Inc.," Wells noted. "We now own all of the equity in the SHAL entities, and substantially all of En-Tel Communications, LLC. We are particularly excited about SHAL, which owns and leases a 2,500-mile fiber-optic network throughout Minnesota used to provide low cost, high quality transport facilities. We view SHAL as strategic to our Minnesota operations, and feel it offers us an opportunity to further expand in the wholesale and transport markets. We are confident that our newly acquired local exchange and fiber network operations, and the markets and customers they serve, will continue to have a positive impact on our future results as we realize the benefits associated with the integration and growth of our Minnesota operations.

30.     In light of the Company's future prospects and expectations outlined herein, the Directors have no valid or pressing reason to sell the Company at the low value contemplated in the Proposed Transaction, particularly in the current depressed economic and valuation atmosphere (as explained below).

**The Proposed Transaction is Unfair**

31.     On November 24, 2009, the Company issued a press release announcing that the Individual Defendants had approved an agreement under which Windstream would acquire Iowa Telecom. As the press release stated:

Iowa Telecommunications Services, Inc. (NYSE: IWA), announced today that its Board of Directors has approved an agreement for Windstream Corporation (NYSE: WIN) to acquire the Newton, Iowa-based telecommunications company in a transaction valued at approximately $1.1 billion.

Iowa Telecom provides communications services to residential and business customers in approximately 460 Iowa and Minnesota communities. The company

7

has approximately 800 employees and serves about 256,000 access lines, about 95,000 high-speed Internet customers and about 26,000 digital TV customers.

"For the past 10 years, Iowa Telecom has been committed to providing advanced communications services to our customers," stated Alan L. Wells, Iowa Telecom Chairman and Chief Executive Officer. "Our dedicated employees have helped create a solid reputation with our customers and within the communities we serve. As the telecommunications industry changes, it has become clear that we need to increase the size and scale of our operations in order to continue to offer our customers the services they need. This has been a difficult decision, but we firmly believe that the combination with Windstream is in the best interest of our company, our customers and our shareholders."

Iowa Telecom shareholders will receive 0.804 shares of Windstream stock and $7.90 in cash per each Iowa Telecom share under terms of the agreement approved by the boards of directors of both companies. Windstream expects to issue approximately 26.5 million shares of stock valued at $269 million, based on the company's closing stock price on Nov. 23, 2009, and pay approximately $261 million in cash as part of the transaction. Windstream also will repay estimated net debt of approximately $598 million.

"Iowa Telecom's commitment to meeting the communications needs of its customers, and its focus on customer service, has resulted in solid operating and financial results. These are well-run, profitable properties that offer a unique opportunity to expand our operations into Iowa and Minnesota," said Jeff Gardner, president and CEO of Windstream.

Little Rock, Ark.-based Windstream provides voice, broadband and entertainment services to customers in 16 states. Similar to Iowa Telecom, Windstream has a proud heritage of being very involved in their local communities. Windstream will maintain an operating presence in the headquarters building in Newton and plans to expand the existing Newton call center.

"Windstream has an impressive track record of serving customers in communities similar to the ones we serve. Windstream is a leader in our industry, and has a reputation for deploying advanced services," continued Wells. "We're pleased that we've found a company to partner with that is as committed to customer service as we have been."

The transaction is expected to close in mid-2010, subject to certain conditions, including necessary approvals from federal and state regulators and Iowa Telecom shareholders.

32. Under the Proposed Transaction, Iowa Telecom shareholders will receive 0.804 shares of Windstream stock and $7.90 in cash per each Iowa Telecom share. Based on Windstream's closing price on November 23, 2009, Iowa Telecom shareholders will receive consideration valued at $16.04 per Iowa Telecom share. The offer price is unfair to Iowa Telecom's shareholders, particularly since the offer price is considerably lower than the Company's 52-week high of $16.41 and Iowa Telecom's all-time high of $23.52.

33. Moreover, although Iowa Telecom's stock price, like most public companies, has fallen since September 2008, the stock price has increased more than 38% since March 9, 2009. This increase in the Company's stock price reflects the ongoing improvements in the Company's operations and financial results, particularly due to the potential of growth in the telecommunications industry and the Company's recent acquisitions (as discussed above).

34. This increase is all the more compelling in light of the fact that equities valuations continue to be temporarily depressed due to global economic conditions. Additionally, Iowa Telecom has continued to perform well compared to its competitors in the telecommunications industry in spite of the recession. Clearly, Iowa Telecom's value as an ongoing business is greater than the consideration to be paid in the Proposed Transaction. As such, the Proposed Transaction is inadequate to Iowa Telecom's shareholders and represents a significant discount to the Company's actual and intrinsic value.

35. Moreover, the Proposed Transaction appears to be the product of an unfair sales process that allows Wells, one of the Company's directors, to receive a benefit not

shared equally with other Iowa Telecom shareholders by his receiving a seat on the Windstream's Board of Directors if the Proposed Transaction is consummated.

36. Further enhancing the Proposed Transaction's unfairness to Plaintiff and other Iowa Telecom shareholders are other provisions:

    a. <u>No appraisal rights</u>. Unlike the vast majority of sale agreements, appraisal rights are not available to shareholders in the Proposed Transaction. Thus, shareholders have no right to demand and receive judicial appraisal of the fair value of his, her, or its shares in connection with the sale.

    b. <u>Termination Fee</u>. Iowa Telecom must pay Windstream a termination fee of $25 million if, among other things, Iowa Telecom accepts a superior proposal to acquire the Company.

    c. <u>No-solicitation provision</u>. This provision prohibits other buyers from having access to Iowa Telecom's confidential information, thereby decreasing the likelihood that a superior proposal will be made by another suitor.

    d. <u>Matching Rights provision</u>. This provision allows Windstream 72 hours to match any competing offer, if one is made, thereby decreasing the likelihood that a superior proposal will be made by another suitor.

    e. <u>"Force-the-vote" provision.</u> This provision requires the Individual Defendants to submit the Proposed Transaction to a shareholder vote even if a superior proposal is made and the Board changes its recommendation.

37. Accordingly, absent the relief sought herein, Plaintiff will suffer irreparable harm.

## COUNT I
## BREACH OF FIDUCIARY DUTIES

38. Plaintiff repeats and realleges each allegation set forth herein.

39. As Directors of the Company, the Individual Defendants stand in a fiduciary relationship to Plaintiff and the other public stockholders of the Company and owe them the highest fiduciary obligations of loyalty and care. The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes fiduciary responsibilities to maximize the Company's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

40. As discussed herein, the Individual Defendants have breached their fiduciary duties to the Company's shareholders by failing to engage in an honest and fair sale process.

41. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of the Company's assets and will be prevented from benefiting from a value-maximizing transaction.

42. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

43. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against defendants as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Enjoining the Individual Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a fair transaction that does not irreparably harm the Company's shareholders;

C. Awarding Plaintiff and the Class such damages as may be proved at trial including pre- and post-judgment interest,

D. Awarding Plaintiff the cost and disbursements of this action, including reasonable attorneys' and experts' fees; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 11, 2009          Respectfully submitted,

WANDRO & BAER, P.C.

*Kimberley K. Baer*

_____
Michael R. Keller (AT0009506)
mrkeller@2501grand.com
Kimberley K. Baer (AT0000683)
kbaer@2501grand.com
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone: 515.281.1475
Facsimile: 515.281.1474

ATTORNEYS FOR PLAINTIFF

*Of Counsel*:

FINKELSTEIN THOMPSON LLP
Donald J. Enright
Elizabeth K. Tripodi
1050 30th Street, NW
Washington, D.C.  20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

FINKELSTEIN THOMPSON LLP
Mark Punzalan
100 Bush St., Suite 1450
San Francisco, CA 94104
Telephone: (202) 337-8000
Facsimile: (202) 337-8090